UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY THOMAS WILLS,

        Plaintiff,

Case No. 1:13-cv-607

Hon. Robert J. Jonker

v.

UNKNOWN DRABEK, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants Richard Drabek and Danny First (docket no. 27), a "letter motion" to intervene filed by non-party Michael Knudsen (docket no. 21), and a "letter motion" for joinder filed by non-party Steven Alexander (docket no. 24).

    **I.**    **Plaintiff's claims**

Plaintiff, Anthony Thomas Wills, filed this action on June 4, 2013. *See* Compl. (docket no. 1). Plaintiff subsequently filed an amended complaint on August 21, 2014, naming three defendants: Corrections Officer (CO) Drabek; CO First; and CO "John Doe." *See* Amend. Compl. (docket no. 17). CO John Doe is not a party to this action, having been neither identified nor served with a summons. Plaintiff set forth the following allegations in the amended complaint:

    1.    Plaintiff Wills arrived in segregation on Unit 1 [of Ionia Correctional Facility (ICF) ] on April 27th, 2013. C/O Drabek was named within Plaintiff's last lawsuit Case #1:12-cv-00434. He was eliminated as a Defendant. One of the Defendants (Martin) from the case showed Drabek the complaint with his name on it. C/O Drabek told C/O First and C/O John Doe about this. The first time Plaintiff Wills came to go to one shower only because the three Defendants were not working

> that day. (Note: This is a reoccurring thing that happens to most of the prisoners housed on A-Wing in Unit 1 due to the fact the 3 Defendants work on 2nd Shift and 2nd Shift is the ones who handle showers and yard for A-Wing). (This also happened with [former] Plaintiff Alexander and is on camera and can be verified by all the refusals checked on the CSJ-278 sheets. The Defendants will walk by the cell doors and act like they are talking to a prisoner and mark down refused on the CSJ-278 sheets). Defendants had frequently denied Plaintiff Wills access to any type of paper work (grievances, legal mail forms, etc.). The Defendants also threw Plaintiff Wills' store lists away (they handle store lists too) so he could not buy any hygiene products from the store to use. Plaintiff on May 16th, 2013 didn't realize that one of the Defendants was working and tried to go out for shower. C/O First came to Plaintiff's door and stated "If you try this again or continue to try and write grievances on us, I'll make sure you get gassed, tazered, and put on food loaf."
>
> \*   \*   \*
>
> 4.   Due to Plaintiff Alexander not being allowed a pen or paper due to being placed on suicide watch, Plaintiff Wills helped Plaintiff Alexander write his grievances so they could make it within the time allowed period. Neither Plaintiff's grievances to this date [sic] have been processed and Plaintiff Wills is in possession of copies of all the grievances that were filed. As a result of grievances not being processed or responded to, both Plaintiff's exhaustion of remedies could not be fulfilled due to grievance process becoming unavailable to them.
>
> 5.   Plaintiff's have witnessed them do this to almost all inmates on A-Side Unit 1 (no yard or showers) at Ionia Correctional Facility. They do it frequently and everyone on their "don't like list" never get showers or yard period. All 3 Defendants frequently assault inmates in the shower area because the cameras don't point that way, or in dayrooms where there are no cameras. Everyone is terrified to do anything.

*Id.* at ¶ IV. Plaintiff was transferred from ICF to Baraga Correctional Facility (AMF) on June 4, 2013. *Id.* This Court has construed plaintiff's claims as involving First Amendment retaliation. *See* Opinion (docket no. 6). Plaintiff seeks compensatory damages and punitive damages for his time in segregation at ICF. *Id.* at ¶ V.

The amended complaint also named Steven Alexander as an additional plaintiff in this matter, alleging, among other things: that Alexander was placed in segregation on April 23, 2013 (four days before plaintiff); that Alexander was denied a shower on or about May 5, 2013; that

2

Alexander was placed on suicide watch after "accidentally" cutting his wrist on May 16, 2013; that Alexander was placed in a different cell for further observation after his wrist wound "opened up and started to bleed" on May 22, 2013; that Alexander was chained "in a hogstyle position" and denied water for 24 hours; that CO Doe told Alexander "that they were going to poison his food"; that on May 24, 2013, CO First told Alexander that "[i]f you don't stop whining about your arm bitch, I'll make sure you are gassed and then we'll rape you"; that CO Doe told Alexander that he was "going to die in here" and pushed his thumb into Alexander's wound on his arm making it bleed; and, that Alexander was denied pen and paper due to being placed on suicide watch. *See* Amend. Compl. at ¶¶ IV.2, IV.3 and IV.4.

The Court rejected plaintiff's attempt to include Alexander as a plaintiff, finding that "[n]o basis exists for concluding that Steven Alexander has personally indicated an intent to proceed as a Plaintiff in this action" and that plaintiff "may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners." *See* Order Re Various Motions at pp. 2-3 (docket no. 15).

**II.    Defendant's motion for summary judgment**

**A.    Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants Drabek and First seek summary judgment on the ground that plaintiff failed to properly exhaust his administrative remedies prior to filing this action. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The Michigan Department of Corrections (MDOC) requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the

prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust his claim

In his amended complaint, plaintiff admitted that he did not comply with the exhaustion requirement, stating that unidentified segregation staff threw away their grievances and that the grievance coordinator (not a party to this litigation) refused to process grievances:

> Grievance Exhaustion -- Plaintiff's [sic] were not able to exhaust their administrative remedies due to staff within Unit 1 segregation at Ionia Correctional Facility (where Plaintiff Alexander [sic] is currently housed and Plaintiff Wills was housed until his transfer) throwing away grievances. Plaintiff's do not know whether grievances ever made it out of unit. If the grievances did leave the unit then Grievance Coordinator Breedlove refused to process them. This is an issue Plaintiff Wills brought up in his other pending lawsuit (Case #1:12-cv-00434 U.S. Western District of Michigan). Plaintiff's Wills and Alexander [sic] sent in the grievances at the proper times and never [received receipts] or responses on these grievances. Plaintiff's have copies of each grievance filed within their possession. The misuse of the grievance process by segregation staff and Grievance Coordinator Breedlove at Ionia Correctional Facility is a frequent problem for all prisoners housed here.

Amend. Compl.[1]

In their motion, defendants point out that prior to filing his amended complaint on August 21, 2013, plaintiff had exhausted 30 grievances through Step III. *See* Defendants' Brief at p. 7; MDOC Prisoner Step III Grievance Report (docket no. 28-3). Defendants point out that none of these exhausted Step III grievances had a Step I receipt date during the time frame alleged in plaintiff's complaint (identified by defendants as "from April 27, 2013 to June of 2013"). Defendants' Brief at p. 7. While the lack of grievance filings demonstrates that plaintiff did not exhaust any grievances during the relevant time period, it could also support plaintiff's claim that he was prevented from filing grievances. In this regard, the Court notes that one grievance, ICF 13-05-0940-19d ("940") shows a "Step I Received Date" of May 1, 2013, which falls within the relevant time period. *See* MDOC Prisoner Step III Grievance Report at p. 1. However, plaintiff did not exhaust grievance no. 940 prior to filing this action; his Step III grievance remained unexhausted as of October 18, 2013. *Id. See generally, Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").

In his response, plaintiff re-iterated his claim that non-party Grievance Coordinator Breedlove refused to process his grievances. *See* Plaintiff's Response (docket no. 31). In their reply, defendants provided a copy of a "Prisoner Grievance Summary Report" which reflects that MDOC personal at ICF received grievance no. 940 from plaintiff on May 1, 2013 and two other Step I grievances on June 5, 2013. *See* Prisoner Grievance Summary Report (docket no. 34-2). According to defendants, this document demonstrates that based on this record, plaintiff was not

---

[1] Plaintiff's claims against Grievance Coordinator Breedlove in his other lawsuit were dismissed on initial screening for failure to state a claim. *See Wills v. Barber*, No. 1:12-cv-434 (W.D. Mich.) (Opinion and Order) (docket nos. 84 and 85).

7

prohibited from filing grievances while he was in segregation. Defendants' Reply at pp. 1-2 (docket no. 34). Plaintiff responded by filing a sur-reply in which he claims that grievance no. 940 was sent out on April 25, 2013 before he was in segregation, and that the Step I grievances received on June 5, 2013, were sent out after his transfer to AMF. *See* Plaintiff's Sur-reply (docket no. 36).[2]

Plaintiff admits that he did not exhaust any grievances with respect to his First Amendment retaliation claim alleged in this lawsuit. While plaintiff contends that he is excused from this requirement because MDOC personnel prevented him from exhausting grievances, he has failed to support this contention with any factual evidence, such as an affidavit outlining his attempts to exhaust particular grievances. There is no genuine issue of material fact to support plaintiff's assertion that segregation staff and the grievance coordinator prevented him from exhausting grievances while in segregation. Based on this record, plaintiff did not properly exhaust grievances against these two defendants prior to filing this action. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Freeman*, 196 F.3d at 645. Accordingly, defendants Drabek and First's motion for summary judgment should be granted.

**III.    Defendant CO John Doe**

The unserved defendant referred to as "CO John Doe" is not a party to this litigation. Plaintiff has alleged that like defendants Drabek and First, CO John Doe performed retaliatory acts against plaintiff while he was in segregation at ICF. Because plaintiff admittedly did not properly exhaust any grievances during the relevant time period and has not established that he was prohibited from filing grievances during that period, it would be both a futile gesture and an

---

[2] The Court notes that plaintiff's sur-reply brief is itself not properly before the Court, because he did not seek permission to file his sur-reply as required by W.D. Mich. LCivR 7.2(c) (allowing a party opposing a dispositive motion to file a response within 28 days, the moving party to file a reply to the response within 14 days, and providing that "[t]he Court may permit or require further briefing").

uneconomical use of judicial resources to conduct further proceedings against the unserved John Doe defendant.  "Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues."  *Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009).  "[N]o principle forbids a court to notice that [] a defense exists, is bound to be raised, and is certain to succeed when raised."  *Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir.1994).  *See  Laubach v. Scibana*, No. CIV-05-1294-F, 2008 WL 281545 at *12 (W.D. Okla. Jan. 31, 2008) (meritorious affirmative defenses asserted by defendants were "equally applicable to the claims against the unresponsive and unserved defendants" and formed the basis to dismiss the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007)  (a successful affirmative defense of lack of exhaustion raised by defendants served in a prisoner civil rights case "inures to the benefit of any unserved or defaulting defendants"); *Day v. Office of Cook County Sheriff*, No. 2000 C 2529, 2001 WL 561362 at *3 (N.D. Ill. May 21, 2001) (defendant's meritorious defense of qualified immunity applied to other "yet-unserved defendants" who could raise the same defense).  *Cf.  Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[s]everal courts have held that where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant'") (quoting *United States v. Peerless Insurance Company*, 374 F.2d 942, 945 (4th Cir. 1967).

       Here, the parties have fully briefed the exhaustion issue and led the undersigned to determine that defendants Drabek and First are entitled to summary judgment for lack of exhaustion. Since plaintiff did not exhaust any grievances related to the relevant time period, the John Doe

defendant could successfully raise this defense if and when plaintiff identifies and serves him with a copy of the amended complaint. Accordingly, summary judgment should also be entered against the unserved John Doe defendant.

### IV. Motions for joinder and to intervene

Finally, two prisoners seek to become part of this litigation. Prisoner John Michael Knudsen filed a two sentence "letter motion" asking the Clerk to add him as a witness in this case. This letter was docketed as a motion to intervene under Fed. R. Civ. P. 24. *See* Motion (docket no. 21). Prisoner Steven Alexander sent a two page letter to the Clerk which discussed his experience in prison and included a sentence related to this lawsuit, i.e., "I should be a Plaintiff or Witness in this case so this is my Request" (emphasis omitted). *See* Motion (docket no. 24). The Clerk's Office docketed Alexander's letter as a motion for joinder.

The Court will construe Alexander's motion as one to intervene under Fed. R. Civ. P. 24, because "only a person or entity that is already a party may make a motion for joinder." *See Bourgeois v. Vanderbilt*, 251 F.R.D. 368, 370 (W.D. Ark. 2008), citing *Arrow v. Gambler's Supply Inc.*, 55 F.3d 407, 409 (8th Cir.1995) and *Thompson v. Boggs*, 33 F.3d 847, 858 n. 10 (7th Cir.1994) (noting the lack of any precedent for granting a non-party's motion for joinder). *See also*, *Parker-Hannifin Corporation v. Samuel Moore and Company*, 436 F. Supp. 498, 500-01 (N.D. Ohio 1977) (a non-party who sought to join into existing litigation as a party plaintiff erroneously invoked the joinder provisions of Fed. R. Civ. P. 19, 20 and 21; "[p]roperly pleaded, [the movant's] participation in these proceedings should be pursued through the intervention procedures established in Rule 24, Fed. R. Civ. P.").

Fed. R. Civ. P. 24(a) provides intervention as of right, while Fed. R. Civ. P. 24(b) provides for permissive intervention:

> **(a) Intervention of right.** On timely motion, the court must permit anyone to intervene who:
>
>> **(1)** is given an unconditional right to intervene by a federal statute; or
>>
>> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> **(b) Permissive Intervention.**
>
>> **(1) In General.** On timely motion, the court may permit anyone to intervene who:
>>
>>> **(A)** is given a conditional right to intervene by a federal statute; or
>>>
>>> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24.

Prisoner Knudsen's letter is improvidently docketed as a 'motion to intervene,' because it does not meet the basic requirements for a motion.[3] However, even if the Court

---

[3] The Court does not view Knudsen's cryptic letter to the Clerk's Office as a "motion" under the Court Rules. *See* Fed. R. Civ. P. 7(b)(1) (a request for a court order must be made by motion which must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought"). In addition, Knudsen did not serve a copy of this motion on defendants as required by Fed. R. Civ. P. 5(a)(1)(D) ("Unless these rules provide otherwise, each of the following papers must be served on every party: . . . (D) a written motion, except one that may be heard ex parte"). Furthermore, Knudsen failed to comply with W.D. Mich. LCivR 7.1(a), which requires that motions be accompanied by a supporting brief "which shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies." *See Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588, 590 (N.D. Ohio 1999) (*pro se* litigants are required to follow the rules of civil procedure).

construed the letter as a properly filed motion, it would fail because Knudsen does not seek to intervene as a plaintiff in this litigation; he only wants to be listed as a witness. Accordingly, Knudsen's motion to intervene (docket no. 21) should be denied.

Prisoner Alexander's motion is also improvidently filed.[4] But even if the Court construed it as a properly filed motion to intervene, Alexander presents no legal or factual basis to support his intervention as a plaintiff, other than to state that "I did fully give Anthony Thomas Wills [permission] to file what [n]eeded to be filed in my [n]ame." *See* Alexander Motion. Assuming that Alexander gave plaintiff "permission" to file a complaint in his name, plaintiff could not file a lawsuit on behalf of another prisoner. *See* Order Re Various Motions at pp. 2-3. In addition, Alexander has never adopted the allegations set forth in the amended complaint which plaintiff attributes to him. Furthermore, even if Alexander had adopted those allegations, his claims arise from different incidents and under different circumstances from plaintiff's (e.g., Alexander was on suicide watch and suffered injuries). Accordingly, Alexander's motion to intervene (docket no. 24) should be denied. Of course, Alexander can file a separate lawsuit regarding his particular claims.[5]

### V.    Recommendation

For the reasons set forth above, I respectfully recommend defendants' motion for summary judgment (docket no. 27) be **GRANTED** as to defendants Drabek, First and John Doe.

---

[4] Like Knudsen, Alexander's motion does not meet the requirements of Fed. R. Civ. P. 7(b)(1), Fed. R. Civ. P. 5(a)(1)(D), or W.D. Mich. LCivR 7.1(a).

[5] As a final note, if the Court adopts the undersigned's recommendations regarding the dismissal of plaintiff's claims against defendants Drabek, First and John Doe, then both of the motions to intervene would be moot due to the dismissal of plaintiff's action.

I further recommend that the motions to intervene or for joinder filed by non-parties Knudsen and Alexander (docket nos. 21 and 24) be **DENIED**.

Dated:  August 18, 2014             /s/ Hugh W. Brenneman, Jr.
                                    HUGH W. BRENNEMAN, JR.
                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).